UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
_____ DIVISION
(*Electronically Filed*)

| | | |
|---|---|---|
| BRITTANY JULENE BOGGS, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | CASE NO. _____ |
| V. | ) | |
| | ) | |
| APPALACHIAN REGIONAL | ) | |
| HEALTHCARE, INC. D/B/A | ) | |
| WHITESBURG ARH HOSPITAL | ) | **COMPLAINT** |
|    Serve: Christi Lee, Registered Agent 101 | ) | |
|       Airport Gardens Road, Suite 205 | ) | |
|       Hazard, KY 41701-9508 | ) | |
| AND | ) | |
| | ) | |
| MARTY ALAN BAKER, R.N., | ) | |
| INDIVIDUALLY AND AS | ) | |
| EMPLOYEE/AGENT OR OSTENSIBLE | ) | |
| AGENT OF WHITESBURG ARH | ) | |
| HOSPITAL | ) | |
|    Serve: Marty Alan Baker | ) | |
|       770 Thickett Branch | ) | |
|       Ermine, KY 41815 | ) | |
| | ) | |
| DEFENDANTS. | | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Comes now the Plaintiff, Brittany Julene Bogs, by and through counsel, and for her Complaint states as follows:

**PARTIES**

1.     Plaintiff Brittany Julene Boggs ("Brittany"), at all times relevant, was and is at the commencement of this action, a resident of and domiciled in the Commonwealth of Kentucky—where she was and is present as well as had and has intention to make

Kentucky her home indefinitely or lacked and lacks the intention make her home elsewhere—at 319 Scott Avenue, Cumberland, Harlan County, Kentucky 40823.

2.      Defendant Appalachian Regional Healthcare, Inc. d/b/a Whitesburg ARH Hospital ("Whitesburg ARH") was and is at all times relevant a Kentucky corporation organized and existing under the laws of the Commonwealth of Kentucky with its principal place of business at 2260 Executive Drive, Lexington, Fayette County, Kentucky 40505-4808, and with its registered agent for service of process as Christi Lee, 101 Airport Gardens Road, Suite 205, Hazard, Kentucky 41701-9508.

3.      Defendant Marty Alan Baker, R.N. ("Baker"), at all times relevant, was and is at the commencement of this action, a resident of and domiciled in the Commonwealth of Kentucky—where he was and is present as well as had and has the intention to make Kentucky his home indefinitely or lacked and lacks the intention to make his home elsewhere—at 770 Thickett Branch, Ermine, Letcher County, Kentucky 41815. Baker, at all times relevant, was and is a Registered Nurse duly licensed in the Commonwealth of Kentucky who acted individually and/or in the course and scope of his employment at Whitesburg ARH as a servant, employee, agent, and/or ostensible agent. Baker was Brittany's direct supervisor while she was employed at Whitesburg ARH.

## JURISDICTION AND VENUE

4.      Brittany incorporates and realleges Paragraph 1 through and including Paragraph 3 as if fully set forth herein.

5.      This Court has jurisdiction where this matter arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et. seq., as amended by the Civil Rights Act of 1991, and 42 U.S.C. § 1981 et. seq..

6.      Under 28 U.S.C. § 1367, this Court has pendent jurisdiction over claims made under the Commonwealth of Kentucky's laws.

7.      The venue of this action lies within the Eastern District of Kentucky, under 28 U.S.C. § 1391(a), (b), (c), and (d) in that Brittany resides in Harlan County and Baker in Letcher County. Whitesburg ARH operates a hospital facility in Letcher County and has sufficient and significant contacts therein. Furthermore, the claim at issue arises in Whitesburg, Letcher County, Kentucky, which is located in the United States District Court for the Eastern District of Kentucky.

## **<u>BACKGROUND</u>**

8.      Brittany incorporates and realleges Paragraph 1 through and including Paragraph 7 as if fully set forth herein.

9.      Brittany was an ARH employee from December 2007 through October 26, 2018, and specifically a Whitesburg ARH employee from October, 2015 through and including October 26, 2018.

10.     Brittany was an exemplary ARH employee for her tenure of over ten years.

11.     Brittany was a Clinical Nurse Manager at Whitesburg ARH, even receiving the Whitesburg ARH Dynamic Duo Award in 2017.

12.     Brittany earned the admiration and respect of fellow nurses and Senior Management who relied upon her knowledge and expertise to ensure the health, safety, and welfare of patients.

13.     In 2016, Brittany and Baker began a tumultuous on-and-off again relationship.

14.     Baker, a former Letcher County Coroner, became Brittany's Whitesburg ARH supervisor.

15.     Whitesburg ARH was aware of Brittany and Baker's dating relationship from the outset.

16.     In 2017, Baker requested that Whitesburg ARH reassign him to Brittany's night shift. Whitesburg ARH accommodated Baker's request and assigned him to Brittany's night shift, making him Brittany's direct supervisor.

17.     Whitesburg ARH Senior Management took minimal action to mitigate potential workplace issues arising from Brittany and Baker's dating relationship despite the fact that Whitesburg ARH knew of the dating relationship and made Baker the direct supervisor of Brittany. Whitesburg ARH, in individual meetings, merely obtained Brittany and Baker's verbal agreement to not let their relationship filter into the workplace.

18.     Baker made Brittany's work schedule, assigned Brittany's daily activities, and supervised Brittany's daily work throughout their dating relationship.

19.     Brittany and Baker's dating relationship ended in August 2017.

20.     In April 2018, Brittany notified her Nurse Manager that Baker continued to harass her in the workplace due to personal issues between Brittany and Baker.

21.     Baker acted violently and verbally abused Brittany. Moreover, Baker repeatedly scheduled Brittany for twelve hour shifts on consecutive weekends to control her personal life outside of the workplace.

22.     On or about March or April 2018, Baker violently crushed Brittany's cellular phone at the workplace and on Whitesburg ARH's hospital premises. Brittany's cellular

phone contained numerous messages, e-mails, photos, and information that Baker did not want to come to light.

23.     Brittany reported Baker's act of violence and destruction of personal property to Whitesburg ARH. In response, Whitesburg ARH merely scheduled Baker and Brittany for different night shifts—despite the fact that Baker continued to come to Whitesburg ARH outside his scheduled times.

24.     On October 14, 2018, Baker violently attacked Brittany outside of the workplace. Baker viciously head-butted Brittany. Baker viciously kicked Brittany. Baker viciously hit Brittany. Baker viciously slapped Brittany. Baker viciously bit Brittany. Baker repeatedly made unwanted physical contact against Brittany on numerous parts of her body.

25.     Baker's vicious attack physically injured Brittany. Baker lacerated Brittany's nose and bruised Brittany's body all over.

26.     Brittany sought and received subsequent medical treatment at Whitesburg ARH's emergency room—her place of employment.

27.     Brittany stayed home the next two days because she was not scheduled to work at Whitesburg ARH.

28.     On October 19, 2018, Brittany returned to work at Whitesburg ARH. Brittany's return to work coincided with Baker's vacation.

29.     Upon his return, Baker threatened Brittany if she disclosed his attack to anyone else. Baker threatened Brittany's position at Whitesburg ARH. Baker accosted Brittany at Whitesburg ARH. He further threatened to harm Brittany and her family if she made any disclosures.

30.     Brittany contacted law enforcement and initiated criminal charges against Baker because she feared for her physical safety, mental health, and employment.

31.     Upon contacting law enforcement, Brittany notified Whitesburg ARH Chief Nursing Officer Joyce Griffith that Baker violently attacked her. Brittany requested that Whitesburg ARH Chief Nursing Officer Joyce Griffith implement accommodations to create a safe and harassment free work environment.

32.     Whitesburg ARH Chief Nursing Officer Joyce Griffith proposed that Brittany accept a pay reduction of $3.00 per hour and move to the day shift, sacrificing and disrupting her parenting responsibilities.

33.     Brittany then requested that Whitesburg ARH allow her to take administrative leave. Whitesburg ARH peremptorily denied Brittany's administrative leave request.

34.     On October 26, 2018, Brittany resigned from Whitesburg ARH because Whitesburg ARH failed to propose or to implement reasonable workplace accommodations to protect her physical safety and mental health from further injury at the hands of her direct supervisor, Baker. Moreover, Whitesburg ARH failed to propose or to implement reasonable workplace accommodation to ensure a harassment and violence free workplace environment. Instead, Whitesburg ARH perpetuated Baker's attack through its insistence that Brittany accept a pay reduction and home life disruption in exchange for a safe and harassment free workplace.

35.     Whitesburg ARH constructively discharged Brittany when it failed to offer any reasonable alternative or accommodation to ensure her physical and mental safety.

36.     Whitesburg ARH further constructively discharged Brittany when it failed to suspend, terminate, or reassign Baker.

37.     Whitesburg ARH further constructively discharged Brittany when it peremptorily denied her request for administrative leave until such time that Whitesburg ARH could complete a meaningful investigation into the attack and Baker's prior acts while in a direct supervision role.

38.     On October 26, 2018, Brittany was granted a Temporary Emergency Protective Order ("EPO"). (Exhibit A).

39.     On October 31, 2018, Baker was arraigned on charges of Assault in the Fourth Degree—a Class A misdemeanor.

40.     On November 7, 2018, Baker plead guilty to Assault in the Fourth Degree and was sentenced to six months in jail—probated for a two year term. (Exhibit B).

41.     Baker was placed on probation and investigated by the Kentucky Board of Nursing.

42.     Whitesburg ARH policies and procedures state that the following is unacceptable behavior:

    a.  Violating ARH policies regarding discrimination and harassment;

    b.  Using profane, foul, obscene, insulting, abusive, or crude language, inappropriate jokes, racial slurs, sexual comments; and

    c.  Conviction of high misdemeanor or crime involving moral turpitude, or the commission of acts of moral turpitude, either at or outside the workplace.

43.     Whitesburg ARH continues to employ Baker despite his harassment, inappropriate language, conviction of a misdemeanor, and crimes of moral turpitude each of which constitute unacceptable behavior that are immediate grounds for termination under Whitesburg ARH's policies and procedures.

44.     Whitesburg ARH's continued employment of Baker shocks the conscience given the fact that Baker is a Registered Nurse at a hospital charged with the care, safety, and well-being of sick, infirm, and vulnerable individuals—including other women, children, and the elderly.

45.     Whitesburg ARH failed to discipline or take any meaningful action against Baker for his vicious assault, harassment, and workplace violence against Brittany.

46.     On or about December 4, 2018, Brittany applied for unemployment benefits but was initially denied. The Unemployment Commission's hearing referee awarded unemployment benefits to Brittany upon appeal.  (Exhibit C).

47.     Whitesburg ARH appealed the referee's decision to the Unemployment Commission. The Unemployment Commission upheld the referee's decision and entered an Appellate Opinion is Brittany's favor. (Exhibit D). The Unemployment Commission considered sworn testimony of Brittany, Whitesburg ARH Human Resources Manager Tracy Reed, Whitesburg ARH Chief Nursing Officer Joyce Griffith, and Whitesburg ARH Supervisor Anna Sexton.

48.     Since her constructive discharge, Brittany suffered significant income loss—receiving only unemployment compensation—as the sole provider for her three children. Brittany was diagnosed with Post-Traumatic Stress Disorder ("PTSD"). She suffers from insomnia. She suffers from depression. She suffers from anxiety. She

suffered injury to her reputation in the community. And Brittany has undergone numerous psychiatric counseling sessions. Brittany suffered the aforementioned as a direct, proximate, and reasonably foreseeable result of Baker's harassment, attack, and workplace violence against her and the perpetuation thereof by Whitesburg ARH when it constructively discharged Brittany.

49.    In March, 2020, approximately one (1) year and five (5) months after Brittany was constructively discharged by Whitesburg ARH she found part-time employment. Brittany remains partially unemployed and unable to find suitable, comparable full-time employment within a reasonable geographic parameter.

## REMEDY EXHAUSTION
## NOTICE OF RIGHT TO SUE

50.    Brittany incorporates and realleges Paragraph 1 through and including Paragraph 49 as if fully set forth herein.

51.    Brittany timely filed charges with the Equal Employment Opportunity Commission alleging unlawful employment practices under 42 U.S.C. § 2000e-5(b), (e)(1).

52.    Brittany requested and received a right-to-sue notice more than 180 days after she timely filed her charge under 42 U.S.C. § 2000e-5(f)(1); 29 C.F.R. § 1601.28. (Right-to-sue Notice attached as Exhibit E).

53.    Brittany commences this civil action against Defendants less than 90 days following receipt of her right-to-sue notice under 42 U.S.C. § 2000e-5(f)(1).

**PENDENT JURISDICTION**
**FEDERAL JURISDICTION OF STATE LAW CLAIMS**

54.     Brittany incorporates and realleges Paragraph 1 through and including Paragraph 53 as if fully set forth herein.

55.     Brittany, through counsel, states that this honorable Court has jurisdiction over claims made under the laws of the Commonwealth of Kentucky under 28 U.S.C. § 1367.

56.     Brittany, through counsel, states that this honorable Court should use its discretion to exercise pendent jurisdiction over Brittany's claims made under the laws of the Commonwealth of Kentucky.

**RESPONDEAT SUPERIOR**
**EMPLOYER LIABILITY FOR EMPLOYEE TORTS**

57.     Brittany incorporates and realleges Paragraph 1 through and including Paragraph 56 as if fully set forth herein.

58.     Brittany, through counsel, states that Whitesburg ARH is liable for intentional torts committed by employee Baker under the doctrine of respondeat superior.

**COUNT ONE**
**EMPLOYMENT DISCRIMINATION UNDER 42 U.S.C. § 2000E ET. SEQ.**

59.     Brittany incorporates and realleges Paragraph 1 through and including Paragraph 58 as if fully set forth herein.

60.     Whitesburg ARH—by and through its supervisory agents, agents, and employees—and Baker's acts or failures to act constituted unlawful employment practices in that they discriminated against Brittany with respect to the terms and conditions of her employment based on her sex pursuant to 42 U.S.C. § 2000E, *et seq.*

61.     Whitesburg ARH—by and through its supervisory agents, agents, and employees—and Baker discriminated against Brittany when they constructively terminated her for being the victim of violence at the hands of a Baker—a male employee—and failed to treat her similarly.

62.     Whitesburg ARH—by and through its supervisory agents, agents, and employees—is strictly liable for the acts or failures to act of its supervisory personnel who treated Brittany less favorably than male employees.

63.     Whitesburg ARH—by and through its supervisory agents, agents, and employees—and Baker's foregoing actions or failures to act caused Brittany to suffer damages that included, but are not limited to, past and future lost wages and benefits, medical expenses, other expenses, loss of earning capacity, shame, humiliation, reputational damage, and severe emotional distress.

## <u>COUNT TWO</u>
## RETALIATION UNDER 42 U.S.C. § 2000E ET. SEQ.

64.     Brittany incorporates and realleges Paragraph 1 through and including Paragraph 63 as if fully set forth herein.

65.     Whitesburg ARH—by and through its supervisory agents, agents, and employees—and Baker's acts or failures to act constituted unlawful employment practices in that they tended to limit, segregate, and classify Brittany in such a way as to deprive her of employment opportunities, or otherwise adversely affect her employee status because of her sex and in retaliation for her reporting harassment and assault by another male supervisory employee.

66.     Whitesburg ARH—by and through its supervisory agents, agents, and employees—and Baker further limited and deprived Plaintiff of employment opportunities and adversely affected her employee status when they constructively forced her to change work shifts and to accept a pay reduction as a condition of employment in a harassment-free workplace separate from her male attacker and supervisory employee 42 U.S.C. § 2000E, *et. seq*.

67.     Whitesburg ARH—by and through its supervisory agents, agents, and employees—and Baker's foregoing actions or failures to act caused Brittany to suffer damages that included, but are not limited to, past and future lost wages and benefits, medical expenses, other expenses, loss of earning capacity, shame, humiliation, reputational damage, and severe emotional distress.

### COUNT THREE
### DISCRIMINATION FOR MAKING CHARGES, TESTIFYING, ASSISTING, OR PARTICIPATING IN ENFORCEMENT PROCEEDINGS
### UNDER 42 U.S.C. § 2000E ET. SEQ.

68.     Brittany incorporates and realleges Paragraph 1 through and including Paragraph 67 as if fully set forth herein.

69.     Whitesburg ARH—by and through its supervisory agents, agents, and employees—treated Brittany unfairly and discriminated against her on the basis of sex and subjected her to a hostile work environment when it constructively forced her to change work shifts and to accept a pay reduction as a condition of employment upon her participation in a civil proceeding, criminal proceeding, and employment investigation that involved her male then-supervisor who harassed and attacked her.

70.     Whitesburg ARH—by and through its supervisory agents, agents, and employees—ignored and failed to properly respond to Brittany's complaints regarding the acts of a male, then-supervisor who harassed and attacked her.

71.     Whitesburg ARH—by and through its supervisory agents, agents, and employees—constructively terminated Brittany, based on her sex after she reported that her male then-supervisor harassed and attacked her, when they forced her to change work shifts and to accept a pay reduction as a condition of violence and harassment free employment.

72.     Whitesburg ARH—by and through its supervisory agents, agents, and employees—engaged in sexual discrimination, retaliatory in nature, through its actions or failures to act where they constructively terminated Brittany after she began to participate in a civil proceeding, criminal proceeding, and employment investigation that involved her male then-supervisor who harassed and attacked her pursuant to 42 U.S.C. § 2000E, *et. seq*.

73.     Whitesburg ARH—by and through its supervisory agents, agents, and employees—are strictly liable for the acts or failures to act of its supervisory personnel who treated Brittany less favorably than male employees.

74.     Whitesburg ARH—by and through its supervisory agents, agents, and employees—and Baker's foregoing actions or failures to act caused Brittany to suffer damages that included, but are not limited to, past and future lost wages and benefits, medical expenses, other expenses, loss of earning capacity, shame, humiliation, reputational damage, and severe emotional distress.

## COUNT FOUR
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

75.    Brittany incorporates and realleges Paragraph 1 through and including Paragraph 74 as if fully set forth herein.

76.    Whitesburg ARH—by and through its supervisory agents, agents, and employees—and Baker's acts or failures to act were extreme, outrageous, and intolerable as well as were intentional or reckless in that they offend against generally accepted standards of decency and morality.

77.    Whitesburg ARH—by and through its supervisory agents, agents, and employees—and Baker's acts or failures to act directly and proximately caused Brittany to undergo numerous psychiatric counseling sessions as well as to suffer from PTSD, insomnia, depression, anxiety, and a damaged reputation in the community.

78.    Whitesburg ARH—by and through its supervisory agents, agents, and employees—and Baker's foregoing actions or failures to act caused Brittany to suffer damages that included, but are not limited to, past and future lost wages and benefits, medical expenses, other expenses, loss of earning capacity, shame, humiliation, reputational damage, and severe emotional distress.

## COUNT FIVE
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

79.    Brittany incorporates and realleges Paragraph 1 through and including Paragraph 78 as if fully set forth herein.

80.    Whitesburg ARH—by and through its supervisory agents, agents, and employees—and Baker's acts or failures to act were extreme, outrageous, and intolerable

as well as were negligent or careless in that they offend against generally accepted standards of decency and morality.

81.    Whitesburg ARH—by and through its supervisory agents, agents, and employees—and Baker's acts or failures to act constitute a failure to exercise ordinary care in the hiring/retention, management, and supervision of its employees to ensure a safe, harassment-free workplace devoid of assault, harassment, and acts of workplace violence.

82.    Whitesburg ARH—by and through its supervisory agents, agents, and employees—and Baker's acts or failures to act created a foreseeable risk of harm to Brittany.

83.    Whitesburg ARH—by and through its supervisory agents, agents, and employees—and Baker's acts or failures to act directly and proximately caused Brittany to undergo numerous psychiatric counseling sessions as well as to suffer from PTSD, insomnia, depression, anxiety, and a damaged reputation in the community.

84.    Whitesburg ARH—by and through its supervisory agents, agents, and employees—and Baker's foregoing actions or failures to act caused Brittany to suffer damages that included, but are not limited to, past and future lost wages and benefits, medical expenses, other expenses, loss of earning capacity, shame, humiliation, reputational damage, and severe emotional distress.

## COUNT SIX
## NEGLIGENT INVESTIGATION

85.    Brittany incorporates and realleges Paragraph 1 through and including Paragraph 84 as if fully set forth herein.

86.     As set forth above, Brittany notified Whitesburg ARH of Baker's harassment and acts of workplace violence which included violent and verbal abuse of Brittany, the exertion of control over her personal life through continually scheduling Brittany for twelve hour shifts on consecutive weekends, and crushing Brittany's cellular phone in Whitesburg ARH property.

87.     As set forth above, Brittany notified Whitesburg ARH of Baker's vicious attack, her initiation of criminal charges against Baker, and her petition for an EPO against Baker as part of her request for administrative leave—which was peremptorily denied— such that Whitesburg ARH could meaningfully investigate Baker's actions.

88.     Whitesburg ARH—by and through its supervisory agents, agents, and employees—failed to exercise ordinary care in that its acts or failures to act were negligent in the performance of a meaningful investigation into the aforementioned harassment, attack, and workplace violence by supervisory employee Baker and the facilitation of a safe, harassment-free workplace devoid of assault, harassment, and acts of workplace violence.

89.     Whitesburg ARH—by and through its supervisory agents, agents, and employees—created a foreseeable risk of harm to Brittany through its acts or failures to act.

90.     Whitesburg ARH—by and through its supervisory agents, agents, and employees—directly and proximately caused Brittany to undergo numerous psychiatric counseling sessions as well as to suffer from PTSD, insomnia, depression, anxiety, and a damaged reputation in the community through its acts or failures to act.

91.     Whitesburg ARH—by and through its supervisory agents, agents, and employees—caused Brittany to suffer damages that included, but are not limited to, past and future lost wages and benefits, medical expenses, other expenses, loss of earning capacity, shame, humiliation, reputational damage, and severe emotional distress through its aforementioned actions or failures to act.

## <u>COUNT SEVEN</u>
**FAILURE TO TAKE PROMPT, APPROPRIATE, AND/OR EFFECTIVE REMDIAL ACTION TO REMEDY THE WOKRPLACE HARASSMENT AND VIOLENCE**

92.     Brittany incorporates and realleges Paragraph 1 through and including Paragraph 91 as if fully set forth herein.

93.     As set forth above, Brittany notified Whitesburg ARH of Baker's harassment and acts of workplace violence which included violent and verbal abuse of Brittany, the exertion of control over her personal life through continually scheduling Brittany for twelve hour shifts on consecutive weekends, and crushing Brittany's cellular phone in Whitesburg ARH property.

94.     As set forth above, Brittany notified Whitesburg ARH of Baker's vicious attack, her initiation of criminal charges against Baker, and her petition for an EPO against Baker as part of her request for administrative leave—which was peremptorily denied—such that Whitesburg ARH could meaningfully investigate Baker's actions and to remedy the matter.

95.     Whitesburg ARH—by and through its supervisory agents, agents, and employees—was negligent in its failure to exercise ordinary care in that it failed to take prompt, appropriate, and/or effective remedial action to remedy the harassment and

workplace violence as well as to ensure a safe, harassment-free workplace devoid of assault, harassment, and acts of workplace violence.

96.     Whitesburg ARH—by and through its supervisory agents, agents, and employees—created a foreseeable risk of harm to Brittany through its acts or failures to act.

97.     Whitesburg ARH—by and through its supervisory agents, agents, and employees—directly and proximately caused Brittany to undergo numerous psychiatric counseling sessions as well as to suffer from PTSD, insomnia, depression, anxiety, and a damaged reputation in the community.

98.     Whitesburg ARH—by and through its supervisory agents, agents, and employees—caused Brittany to suffer damages that included, but are not limited to, past and future lost wages and benefits, medical expenses, other expenses, loss of earning capacity, shame, humiliation, reputational damage, and severe emotional distress through its aforementioned actions or failures to act.

## COUNT EIGHT
## NEGLIGENT HIRING AND/OR RETENTION

99.     Brittany incorporates and realleges Paragraph 1 through and including Paragraph 98 as if fully set forth herein.

100.    Upon information and belief, Baker has a reputation in the community for abuse and/or harassment of women.

101.    Whitesburg ARH—by and through its supervisory agents, agents, and employees—knew or should have known Baker's community reputation at the time they hired him and/or during the course of his continued employment.

102.    As set forth above, Brittany notified Whitesburg ARH of Baker's vicious attack, her initiation of criminal charges against Baker, and her petition for an EPO against Baker.

103.    Whitesburg ARH—by and through its supervisory agents, agents, and employees—negligently failed to exercise ordinary care in that it hired and/or retained Baker as an employee.

104.    Whitesburg ARH—by and through its supervisory agents, agents, and employees—created a foreseeable risk of harm to Brittany through its acts or failures to act.

105.    Whitesburg ARH—by and through its supervisory agents, agents, and employees—directly and proximately caused Brittany to undergo numerous psychiatric counseling sessions as well as to suffer from PTSD, insomnia, depression, anxiety, and a damaged reputation in the community.

106.    Whitesburg ARH—by and through its supervisory agents, agents, and employees—caused Brittany to suffer damages that included, but are not limited to, past and future lost wages and benefits, medical expenses, other expenses, loss of earning capacity, shame, humiliation, reputational damage, and severe emotional distress through its aforementioned actions or failures to act.

## COUNT NINE
## NEGLIGENT SUPERVISION

107.    Brittany incorporates and realleges Paragraph 1 through and including Paragraph 106 as if fully set forth herein.

108.   Whitesburg ARH—by and through its supervisory agents, agents, and employees—employed Baker as a management team member at all relevant times herein.

109.   Whitesburg ARH—by and through its supervisory agents, agents, and employees—was and is responsible for proper supervision of Baker.

110.   Whitesburg ARH—by and through its supervisory agents, agents, and employees—failed to reasonably monitor or control Baker's conduct when they (a) knew or should have known Baker's community reputation for abuse and/or harassment of women, (b) learned of Baker and Brittany's then-dating relationship, and/or (c) learned of Baker's harassment and acts of workplace violence against Brittany.

111.   Whitesburg ARH—by and through its supervisory agents, agents, and employees—negligently failed to exercise ordinary care in that its supervision of Baker as an employee.

112.   Whitesburg ARH—by and through its supervisory agents, agents, and employees—created a foreseeable risk of harm to Brittany through its acts or failures to act in supervision of Baker as an employee.

113.   Whitesburg ARH—by and through its supervisory agents, agents, and employees—directly and proximately caused Brittany to undergo numerous psychiatric counseling sessions as well as to suffer from PTSD, insomnia, depression, anxiety, and a damaged reputation in the community.

114.   Whitesburg ARH—by and through its supervisory agents, agents, and employees—caused Brittany to suffer damages that included, but are not limited to, past and future lost wages and benefits, medical expenses, other expenses, loss of earning

capacity, shame, humiliation, reputational damage, and severe emotional distress through its aforementioned actions or failures to act.

## COUNT TEN
### WRONGFUL TERMINATION (FORCED RESIGNATION)

115.   Brittany incorporates and realleges Paragraph 1 through and including Paragraph 114 as if fully set forth herein.

116.   Whitesburg ARH—by and through its supervisory agents, agents, and employees—became aware of the tumultuous "on again and off again" dating relationship between Baker and Brittany, yet despite this knowledge, they reassigned Baker, at his request, to the night shift where Brittany worked, and made him Brittany's direct supervisor granting him authority to make Brittany's schedule, assign her work, and supervise her as she performed her daily job duties.

117.   Whitesburg ARH—by and through its supervisory agents, agents, and employees—authorized Baker to directly supervise Brittany during the course and after their tumultuous dating relationship.

118.   Whitesburg ARH—by and through its supervisory agents, agents, and employees—negligently failed to exercise ordinary care and created a foreseeable risk of harm to Brittany through facilitation of conditions  that would readily develop into a hostile working environment for her as well as to lead to an act of workplace violence and a vicious attack against her.

119.   Whitesburg ARH—by and through its supervisory agents, agents, and employees—directly and proximately caused (a) the creation of a hostile work environment, (b) Baker to continually harass Brittany, (c) Baker to attack Brittany, (d)

Baker to violently destroy Brittany's personal property on Whitesburg ARG property, and (e) Brittany to have no reasonable accommodation that allowed her to return to work including administrative leave during the pendency of a meaningful investigation.

120.   Whitesburg ARH—by and through its supervisory agents, agents, and employees—forced Brittany to resign her position on October 26, 2018, through its aforementioned actions or failures to act which created an environment that an objective and reasonable person would find intolerable and feel compelled to resign from.

121.   Whitesburg ARH—by and through its supervisory agents, agents, and employees—directly and proximately caused Brittany to undergo numerous psychiatric counseling sessions as well as to suffer from PTSD, insomnia, depression, anxiety, and a damaged reputation in the community.

122.   Whitesburg ARH—by and through its supervisory agents, agents, and employees—caused Brittany to suffer damages that included, but are not limited to, past and future lost wages and benefits, medical expenses, other expenses, loss of earning capacity, shame, humiliation, reputational damage, and severe emotional distress through its aforementioned actions or failures to act.

## COUNT ELEVEN
## BREACH OF EXPRESS CONTRACT

123.   Brittany incorporates and realleges Paragraph 1 through and including Paragraph 122 as if fully set forth herein.

124.   Whitesburg ARH—by and through its supervisory agents, agents, and employees—entered into an express contract that consists wholly or partly of written or spoken words.

125.   Whitesburg ARH—by and through its supervisory agents, agents, and employees—agreed to enforce behavioral standards and to ensure a suitable workplace environment as a condition of Brittany's employment.

126.   Whitesburg ARH—by and through its supervisory agents, agents, and employees—proscribed the following unacceptable behavior as part of its express agreement with Brittany:

    a.  Violating ARH policies regarding discrimination and harassment;

    b.  Using profane, foul, obscene, insulting, abusive, or crude language, inappropriate jokes, racial slurs, sexual comments; and

    c.  Conviction of high misdemeanor or crime involving moral turpitude, or the commission of acts of moral turpitude, either at or outside the workplace.

127.   Whitesburg ARH—by and through its supervisory agents, agents, and employees—breached its express contract with Brittany when it allowed Baker to repeatedly engage in the aforementioned unacceptable behavior in breach of Whitesburg ARH's express contract with Brittany.

128.   Whitesburg ARH—by and through its supervisory agents, agents, and employees—created a foreseeable risk of harm to Brittany through its breach of its express contract with Brittany.

129.   Whitesburg ARH—by and through its supervisory agents, agents, and employees—directly and proximately caused Brittany to undergo numerous psychiatric counseling sessions as well as to suffer from PTSD, insomnia, depression, anxiety, and

a damaged reputation in the community when it breached its express contract with Brittany.

130.   Whitesburg ARH—by and through its supervisory agents, agents, and employees—caused Brittany to suffer damages that included, but are not limited to, past and future lost wages and benefits, medical expenses, other expenses, loss of earning capacity, shame, humiliation, reputational damage, and severe emotional distress through its aforementioned actions or failures to act.

## COUNT TWELVE
## BREACH OF IMPLIED CONTRACT

131.   Brittany incorporates and realleges Paragraph 1 through and including Paragraph 130 as if fully set forth herein.

132.   Whitesburg ARH—by and through its supervisory agents, agents, and employees—entered into an implied contract through mutual assent—a meeting of minds—and intentional manifestation of such assent that consists wholly or partly of acts other than written or spoken words.

133.   Whitesburg ARH—by and through its supervisory agents, agents, and employees—agreed to enforce behavioral standards and to ensure a suitable workplace environment as a condition of Brittany's employment.

134.   Whitesburg ARH—by and through its supervisory agents, agents, and employees—proscribed the following unacceptable behavior as part of its implied agreement with Brittany:

      a.  Violating ARH policies regarding discrimination and harassment;

b. Using profane, foul, obscene, insulting, abusive, or crude language, inappropriate jokes, racial slurs, sexual comments; and

c. Conviction of high misdemeanor or crime involving moral turpitude, or the commission of acts of moral turpitude, either at or outside the workplace.

135.   Whitesburg ARH—by and through its supervisory agents, agents, and employees—breached its implied contract with Brittany when it allowed Baker to repeatedly engage in the aforementioned unacceptable behavior in breach of Whitesburg ARH's express contract with Brittany.

136.   Whitesburg ARH—by and through its supervisory agents, agents, and employees—created a foreseeable risk of harm to Brittany through its breach of its implied contract with Brittany.

137.   Whitesburg ARH—by and through its supervisory agents, agents, and employees—directly and proximately caused Brittany to undergo numerous psychiatric counseling sessions as well as to suffer from PTSD, insomnia, depression, anxiety, and a damaged reputation in the community when it breached its express contract with Brittany.

138.   Whitesburg ARH—by and through its supervisory agents, agents, and employees—caused Brittany to suffer damages that included, but are not limited to, past and future lost wages and benefits, medical expenses, other expenses, loss of earning capacity, shame, humiliation, reputational damage, and severe emotional distress through its aforementioned actions or failures to act.

## COUNT THIRTEEN
### ASSAULT

139.    Brittany incorporates and realleges Paragraph 1 through and including Paragraph 138 as if fully set forth herein.

140.    On October 14, 2018, Baker caused the nonconsensual unwanted touching of Brittany on her face, neck, shoulder, legs, and other body parts.

141.    On October 14, 2018, Brittany had a reasonable apprehension of imminent or harmful or offensive contact due to Baker's vicious and repeated head-butts, kicks, hits, slaps, and bites against Brittany's body.

142.    Baker's foregoing conduct directly and proximately caused Brittany to undergo numerous psychiatric counseling sessions as well as to suffer from PTSD, insomnia, depression, anxiety, and a damaged reputation in the community when he assaulted Brittany.

143.    Baker's foregoing conduct caused Brittany to suffer damages that included, but are not limited to, past and future lost wages and benefits, medical expenses, other expenses, loss of earning capacity, shame, humiliation, reputational damage, and severe emotional distress through his aforementioned assault on Brittany.

## COUNT FOURTEEN
### BATTERY

144.    Brittany incorporates and realleges Paragraph 1 through and including Paragraph 143 as if fully set forth herein.

145.    On October 14, 2018, Baker caused the nonconsensual unwanted touch of Brittany on her face, neck, shoulder, legs, and other body parts.

146.    Baker's foregoing conduct directly and proximately caused Brittany to undergo numerous psychiatric counseling sessions as well as to suffer from PTSD, insomnia, depression, anxiety, and a damaged reputation in the community when he battered Brittany.

147.    Baker's foregoing conduct caused Brittany to suffer damages that included, but are not limited to, past and future lost wages and benefits, medical expenses, other expenses, loss of earning capacity, shame, humiliation, reputational damage, and severe emotional distress through his aforementioned battery on Brittany.

## COUNT FIFTEEN
## SEX DISCRIMINATION IN VIOLATION OF THE KENTUCKY CIVIL RIGHTS ACT

148.    Brittany incorporates and realleges Paragraph 1 through and including Paragraph 147 as if fully set forth herein.

149.    Brittany—because of her sex—was and is a member of a protected class under the Kentucky Civil Rights Act.

150.    Whitesburg ARH—by and through its supervisory agents, agents, and employees—and Baker's acts and omissions, all or a portion thereof, constructively discharged Brittany.

151.    Whitesburg ARH—by and through its supervisory agents, agents, and employees—and Baker's acts and omissions, all or a portion thereof, discriminated against Brittany on the basis of sex.

152.    Whitesburg ARH—by and through its supervisory agents, agents, and employees—and Baker's acts and omissions, all or a portion thereof, constitute unlawful sex discrimination in violation of the Kentucky Civil Rights Act, KRS 344.010, *et. seq.*

## <u>COUNT SIXTEEN</u>
## SEXUAL HARASSMENT IN VIOLATION OF THE KENTUCKY CIVIL RIGHTS ACT

153.    Brittany incorporates and realleges Paragraph 1 through and including Paragraph 152 as if fully set forth herein.

154.    Brittany—because of her sex—was and is a member of a protected class under the Kentucky Civil Rights Act.

155.    Whitesburg ARH—by and through its supervisory agents, agents, and employees—and Baker's acts and omissions, all or a portion thereof, was subjected to unwelcome sexual harassment that was sufficiently pervasive to effect a term, condition, or privilege of employment as well as created a hostile work environment.

156.    Whitesburg ARH—by and through its supervisory agents, agents, and employees—and Baker's acts and omissions, all or a portion thereof, knew or should have known about the harassment and nevertheless failed to take prompt, corrective action.

157.    Whitesburg ARH—by and through its supervisory agents, agents, and employees—and Baker's acts and omissions, all or a portion thereof, constitute unlawful sexual harassment in violation of the Kentucky Civil Rights Act, KRS 344.010, *et. seq*.

## <u>COUNT SEVENTEEN</u>
## RETALIATION IN VIOLATION OF THE KENTUCKY CIVIL RIGHTS ACT

158.    Brittany incorporates and realleges Paragraph 1 through and including Paragraph 157 as if fully set forth herein.

159.    Brittany engaged in activity and/or conduct protected by the Kentucky Civil Rights Act.

160.    Whitesburg ARH—by and through its supervisory agents, agents, and employees—and Baker were aware of Brittany's protected activity.

161.    Whitesburg ARH—by and through its supervisory agents, agents, and employees—and Baker took adverse employment action against Brittany.

162.    There was a causal connection between Brittany's protected activity and/or conduct and the adverse employment action.

163.    Whitesburg ARH—by and through its supervisory agents, agents, and employees—and Baker's acts and omissions, all or a portion thereof, constitute unlawful retaliation in violation of the Kentucky Civil Rights Act, KRS 344.010, *et. seq*.

## COUNT EIGHTEEN
## PUNITIVE DAMAGES

164.    Brittany incorporates and realleges Paragraph 1 through and including Paragraph 163 as if fully set forth herein.

165.    Whitesburg ARH—by and through its supervisory agents, agents, and employees—and Baker's acts and omissions, all or a portion thereof, were malicious, wanton, reckless, careless, and/or grossly negligent as described herein.

166.    Whitesburg ARH—by and through its supervisory agents, agents, and employees—failed to exercise ordinary care in its hiring, retention, and/or supervision of Baker which includes supervision of the dating and workplace relations between Baker and Brittany as well as management of other workplace aspects to ensure that Brittany was safe and free from harassment, assault, and violent acts by other employees and in the workplace.

167.    Whitesburg ARH—by and through its supervisory agents, agents, and employees—and Baker's maliciousness, recklessness, carelessness, and/or gross negligence directly and proximately entitles Brittany a punitive damages award.

**WHEREFORE**, Plaintiff Brittany Julene Boggs prays that this honorable Court grant her relief as follows:

1.      A judgement against Defendants, jointly and severally, for compensatory damages including, but not limited to, past and future lost wages and benefits, medical expenses, other expenses, loss of earning capacity, shame, humiliation, reputational damage, and severe emotional distress;

2.      A judgement awarding pre-judgment interest and post-judgment interest as allowed by the law;

3.      A judgment awarding punitive damages;

4.      A trial by jury on all issues so triable;

5.      Its costs, attorney's fees and expenses; and

6.      Any other proper and equitable relief to which Plaintiff appears to be entitled.

Respectfully submitted,

LESLIE P. VOSE (KBA #53843)
ERIN C. S. IZZO (KBA #91040)
DOMINIC J. DONOVAN (KBA #97472)
Landrum & Shouse LLP
P.O. Box 951
Lexington, KY 40588-0951
Phone: (859) 255-2424
Fax: (859) 233-0308
lvose@landrumshouse.com
ecizzo@landrumshouse.com
ddonovan@landrumshouse.com

BY:    /s/  Leslie P. Vose
       COUNSEL FOR PLAINTIFF